UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X        Case No.

JENNIFER HENRY,

                        **Plaintiff,**

                                                  **COMPLAINT**

       - against -

                                                **PLAINTIFF DEMANDS**

**LEARNING MENTOR INC d/b/a THE LEARNING**    **A TRIAL BY JURY**
**EXPERIENCE, THE LEARNING EXPERIENCE**
**CORP. and CLAYTISHA WALDEN,** *Individually,*

                         **Defendants.**

-------------------------------------------------------------X

      Plaintiff JENNIFER HENRY (hereinafter "Plaintiff" or "Plaintiff HENRY") by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendant LEARNING MENTOR INC. D/B/A THE LEARNING EXPERIENCE and Defendant THE LEARNING EXPERIENCE CORP. (together referred to herein as "Defendants LEARNING EXPERIENCE") and Defendant CLAYTISHA WALDEN (referred to herein as "Defendant WALDEN") upon personal knowledge, as well as upon information and belief, by alleging and averring as follows:

## NATURE OF THE CASE

1.     Plaintiff HENRY brings this action alleging that Defendants violated Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), amended by the Pregnancy Discrimination Act of 1978, as codified 42 U.S.C. § 2000e(k); the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"); and the New York City Administrative Code § 8-107(a), *et seq.* ("NYCHRL"). Plaintiff HENRY seeks damages to redress the injuries she has suffered as a result of being

1

subjected to discrimination on the basis of her pregnancy and related conditions, as well as retaliation for requesting to express breastmilk as a new mother, complaining of Defendants' refusal to allow Plaintiff to express breastmilk in a private and sanitary space, and also complaining about a change in her pay from a salaried to an hourly employee during her pregnancy, as well as a reduction of her hours upon her disclosure of her pregnancy and following her return from maternity leave.

2. Plaintiff HENRY also complains pursuant to Section 7(r) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 207(r), and Sections 206-c and 195(3) of the New York Labor Law ("NYLL"), based on Defendants' failure to provide her with a private location, free from intrusion, to express breast milk, and to permit her sufficient unpaid or paid break time for that purpose, as required by law. Plaintiff further alleges that Defendants failed to pay her wages for all work performed in violation of the FLSA, 29 U.S.C. §§ 206 and 207, and NYLL §§ 191 and 193, and failed to provide her with accurate wage statements as required under NYLL § 195(3).

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 29 U.S.C. 207 *et seq*. and 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more of the Defendants reside within the Eastern District of New York and a substantial part of the events or omissions giving rise to the claim occurred therein.

## PROCEDURAL PREREQUISITES

5. Plaintiff HENRY filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff HENRY received a Notice of Right to Sue ("Notice") from the EEOC on April 9, 2025, with respect to the charges of discrimination contained herein. A copy of the Notice is annexed hereto as Exhibit A.

7. This Action is being commenced within ninety (90) days of said Notice.

### THE PARTIES

8. At all times relevant hereto, Plaintiff HENRY was a resident of the State of New York and Kings County.

9. At all times relevant hereto, Defendant Learning Mentor was and is a domestic for-profit corporation duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 839 Plainfield Lane, Valley Stream, NY 11581 and a franchisee of Defendant Learning Experience Corp.

10. At all times relevant hereto, Defendant Learning Experience Corp. was and is a domestic for-profit corporation duly existing pursuant to, and by virtue of, the laws of the State of Florida, with its principal place of business located at 210 Hillsboro Technology Drive Deerfield Beach, FL 33441 and a franchise overseeing Defendant Learning Mentor.

11. At all times relevant hereto, Defendant WALDEN was and is an individual residing in the State of New York, as well as the Owner of Defendant Learning Mentor. As such, she had the authority to hire, terminate, and affect the terms and conditions of Plaintiff HENRY's employment or to otherwise influence the decision-making regarding same.

12. At all times relevant hereto, Defendants Learning Experience were Plaintiff HENRY's joint employers under Title VII, the NYSHRL, the NYCHRL, the FLSA, and the NYLL.

## MATERIAL FACTS

### *PLAINTIFF'S UNPAID WAGE CLAIMS*

13. Plaintiff HENRY was officially hired by Defendants Learning Experience on or about February 7, 2023, and physically began mandatory training on or around February 11, 2023. Plaintiff formally commenced her regular duties as Assistant Director of the Infant/Toddler Program with Defendants Learning Experience on or about August 23, 2023.

14. Plaintiff HENRY anticipated an annual salary of $65,000, as per her agreement with the Educational Director/Owner of Defendants Learning Experience, Defendant WALDEN, who hired her.

15. Plaintiff HENRY was hired to work full-time hours and initially worked 8:00 AM to 4:00 PM Monday to Friday, with hours extended to 5:00 PM when necessary to accommodate parent tours.

16. As Assistant Director of the Infant/Toddler Program, Plaintiff HENRY's responsibilities included overseeing the daily operations of the program, developing and delivering education and training programs, ensuring compliance with policies and regulations, maintaining staff and child files, fostering relationships with employees and parents, and participating in staff activities such as events, workshops, and programs. This role required a high level of organizational and interpersonal skills, as well as an understanding of early childhood education standards and practices.

17. As a condition of her employment, Plaintiff HENRY was required by Defendants to complete a series of mandatory trainings, prior to commencing her on-site duties. These trainings were directly related to her position as Assistant Director of the Infant/Toddler

4

Program and covered topics such as infant and toddler safety, child supervision, and other childcare-related responsibilities essential to her role.

18. Plaintiff HENRY completed the mandatory trainings prior to beginning in-person work on or about August 23, 2023. The trainings required Plaintiff to review instructional videos or presentations and complete quizzes demonstrating comprehension. Each training module required a minimum passing score of 80%. Plaintiff performed these trainings for the Defendants' benefit, as the trainings directly contributed to Defendants' business.

19. Plaintiff HENRY began completing these required trainings, on or about February 11, 2023, up until about March 27, 2023.

20. Between approximately February 11, 2023, and March 27, 2023, Plaintiff HENRY completed approximately 36.25 hours of mandatory training during which she was formally employed. Despite performing compensable work activities during this period, Defendants failed to pay Plaintiff her regular salary for the weeks in which this mandatory training occurred, in violation of federal and state wage laws.

21. Plaintiff HENRY was employed by Defendants at an annual salary of $65,000, corresponding to a gross biweekly salary of $2,500, or approximately $1,250 per week. Between on or about February 11, 2023, and March 27, 2023, Plaintiff performed mandatory training work during each of seven consecutive workweeks.

22. As an exempt employee, Plaintiff HENRY was entitled to be paid her full salary for any week in which she performed any work, including mandatory training. Accordingly, Plaintiff was entitled to receive a total of $8,750 in gross wages for this seven-week period.

23. However, Defendants failed to pay Plaintiff HENRY any compensation during this time, resulting in a total shortfall of $8,750 in gross wages owed. Defendants' failure to

compensate Plaintiff for these workweeks in which she performed compensable duties constitutes a violation of the salary requirements of the FLSA and NYLL.

*PLAINTIFF'S CLAIMS OF DISCRIMINATION UNDER*
*TITLE VII, the NYSHRL, the NYCHRL, the FLSA, and the NYLL*

24. Upon commencing her employment with the Defendants, Plaintiff HENRY reported directly to Defendant WALDEN, her immediate supervisor.

25. In or around the first week of September 2023, Plaintiff HENRY informed Defendant WALDEN that she was pregnant.

26. Subsequently, in or around October 2023, after Plaintiff HENRY informed Defendant WALDEN of her pregnancy, Plaintiff HENRY's compensation was unilaterally changed by Defendant WALDEN from a salaried employee to an hourly employee earning $32.50 per hour. Plaintiff was not provided sufficient notice or a contractual agreement related to this change. Additionally, Plaintiff's hours were reduced to 9:00 AM to 12:00 PM, Monday through Thursday, eliminating her Friday shifts, thus resulting in a significant pay cut in Plaintiff's earnings.

27. Defendant WALDEN explained to Plaintiff that the adjustments to Plaintiff HENRY's pay and hours were due to the Learning Center not being officially licensed as a preschool at that time.

28. On or around November 10, 2023, Plaintiff HENRY complained to Defendant WALDEN about her changes in working hours and pay, mentioning that the "transition pose[d] challenges for [her] family, especially with a baby on the way." Despite Plaintiff's complaints about the financial harm caused by these changes, Defendant WALDEN did not respond to her concerns, nor did she adjust her hours or pay.

6

29.    Prior to taking maternity leave, Plaintiff HENRY informed Defendant WALDEN that she intended to work as long as her health allowed. Plaintiff commenced her maternity unpaid leave on or around December 4, 2023.

30.    Plaintiff HENRY returned from maternity leave on or around April 4, 2024, following a mutually agreed-upon four-month leave. The suggestion of a four-month maternity leave originated from Defendant WALDEN, who responded "four months" when Plaintiff inquired about the appropriate duration of leave.

31.    Plaintiff HENRY agreed and relied on Defendant WALDEN's representation in planning and taking her leave. Although Defendant WALDEN later asked Plaintiff to return to work earlier than the originally discussed and approved date, Plaintiff declined and returned on April 4, 2024, consistent with their prior agreement.

32.    Upon information and belief, when Plaintiff HENRY responded to Defendant WALDEN that she would not return prior to the anticipated end of her maternity leave, Defendant WALDEN spoke to employees of Defendants Learning Center about Plaintiff not wanting to work and determining a way to get rid of Plaintiff.

33.    Importantly, prior to returning to work on April 4, 2024, Plaintiff HENRY provided Defendant WALDEN availability to work full-time hours, as she had worked prior to notifying Defendants of her pregnancy and her hours subsequently being reduced. Plaintiff communicated this availability in an April 1, 2024 email, specifying she could work Monday through Wednesday from 8:00 AM to 4:00 PM (or 7:30 AM to 3:30 PM) and Thursday and Friday from 6:00 AM to 2:00 PM. However, Defendant WALDEN informed Plaintiff that she only needed her to work from 8:00 AM to 1:00 PM Monday to Friday.

34. On her first day back, Plaintiff HENRY informed Defendant WALDEN of her need to express breast milk at regular intervals while at work, specifically at 9:30 AM and 12:30 PM.

35. On the same day, Plaintiff HENRY was shockingly provided by Defendant WALDEN with a place to pump located inside a bathroom. The pumping location consisted of a chair located in front of a toilet inside of an individual bathroom. Plaintiff immediately complained that this arrangement was not in compliance with the "PUMP act" [referring to her rights under the FLSA to express breastmilk in a sanitary and private space].

36. However, Plaintiff HENRY's complaint was not addressed by Defendant WALDEN and Plaintiff had to continue pumping inside the bathroom for approximately four weeks thereafter.

37. Furthermore, Plaintiff HENRY's pumping schedule, which required her to pump every 2-3 hours, was not honored by the Defendants. Oftentimes, Plaintiff had to cover for Defendant WALDEN who either arrived at work late or left during work hours. As such, at times, Plaintiff was not able to pump until 11:00 AM or 12:00 PM, instead of 9:30 in the morning, as she was covering Defendant WALDEN.

38. These delays caused Plaintiff HENRY overwhelming stress and physical pain, including breast engorgement, leaking, and painful discomfort. She experienced a medically significant drop in milk production, which interfered with her ability to feed her infant and caused her significant emotional distress.

39. There were incidents where a staff member would speak to Plaintiff HENRY and her breast would start to leak due to not pumping on time. While Plaintiff was initially producing

significant amounts of breast milk for her baby, due to the stress and anxiety of not being able to express her breastmilk on time, Plaintiff's milk production dropped significantly.

40. This caused Plaintiff HENRY significant emotional distress.

41. Furthermore, Plaintiff HENRY officially requested the Defendants provide her with paystubs covering the period from her return from maternity leave to the present, at that time, as the paystubs Plaintiff had received were incomplete, inconsistent, and of poor quality, with missing line items, nonstandard formatting, and unexplained variations in payment amounts in violation of the New York Labor Law. Upon information and belief, Defendant WALDEN produced and distributed these unofficial paystubs by manually typing them herself.

42. Additionally, at no time was Plaintiff HENRY ever provided documentation outlining her sick, vacation, or personal leave accruals, or a summary of benefits.

43. Subsequently, Defendant WALDEN began to retaliate against Plaintiff HENRY for taking maternity leave, requesting breaks to express milk as entitled by law, and raising concerns about her change in pay and paystubs.

44. Specifically, beginning in her second week back from maternity leave, Plaintiff HENRY was increasingly reassigned to menial tasks such as serving lunch to students, distributing supplies, and handing out fliers—duties that fell well below her qualifications and job description.

45. Additionally, on or about April 19, 2024, without any warning, Defendant WALDEN reduced Plaintiff's work hours for the week of April 22, 2024, to only one day on that particular week.

46. Furthermore, Plaintiff HENRY's job duties were also abruptly altered by Defendant WALDEN. Plaintiff was assigned responsibilities typically reserved for floaters or substitute teachers, including delivering supplies, covering classroom breaks, and passing out flyers.

47. Then, on or about April 22, 2024, Plaintiff HENRY complained about her change in pay, hours, and lack of proper paystubs to Ean Gensler, the Regional Manager for Defendants Learning Experience. Mr. Gensler responded that he would address these complaints with Defendant WALDEN.

48. Not having heard back from Mr. Gensler, on or about April 25, 2024, Plaintiff HENRY sent an email to Defendant WALDEN detailing her concern regarding her reduction in hours upon her return from maternity leave. She specifically stated that she was available to work for the next week's "new upcoming schedule" from 8:00 AM to 2:00 PM, at her previously agreed-upon salary of $65,000, Monday through Friday, and further complained about her assigned pumping space not complying with the law.

49. Plaintiff HENRY specifically mentioned in her email that "the nursing station should not be located within a bathroom" and that the nursing station "should be equipped with an outlet and a table to facilitate pumping for nursing mothers."

50. Notably, Plaintiff HENRY's proposed reduced schedule was not intended to be permanent, but rather a temporary adjustment of necessity. She informed Defendant WALDEN that her schedule for the upcoming week would be from 8:00 a.m. to 2:00 p.m., due to ongoing issues with Defendants' failure to provide consistent working hours, adequate accommodations for pumping breast milk, and her responsibilities caring for her six-year-

old child. However, Defendant WALDEN unilaterally treated the temporary schedule as a permanent request, despite Plaintiff's intent for it to apply only during that week.

51. In response to Plaintiff HENRY's April 25, 2024, email, Defendant WALDEN suggested using an empty classroom to pump. Defendant WALDEN also engaged in additional retaliation by threatening Plaintiff HENRY's job, stating that she was looking for Plaintiff's replacement.

52. Further attempting to diminish Plaintiff HENRY's role as Assistant Director of the Infant/Toddler Program, Defendant WALDEN subsequently claimed to Plaintiff's colleagues that Plaintiff did not want to work and falsely portrayed her as unreliable.

53. Defendant WALDEN also claimed, for the first time, that the Assistant Director of the Infant/Toddler Program position was full-time and contingent on Plaintiff HENRY obtaining a New York State Teacher Certification in Early Childhood Education. Notably, Plaintiff was never provided with any documentation that stated her employment was contingent on such certification. In fact, Defendant WALDEN never mentioned this requirement to Plaintiff in writing or verbally before this conversation.

54. Moreover, Defendant WALDEN's assertion was incorrect, as Plaintiff HENRY was hired for the Assistant Director of the Infant/Toddler Program position and had the qualifications required under the appropriate statute for the position.

55. Continuing her campaign of retaliation, on or around April 28, 2024, Defendant WALDEN reduced Plaintiff HENRY's work hours, again without prior notice. This reduction not only disregarded Plaintiff's expressed need for regular lactation breaks but also contradicted her repeated requests and stated availability for full-time work.

56.    Specifically, Defendant WALDEN placed Plaintiff on a schedule of 10:00 AM to 2:00 PM. Plaintiff HENRY believes that Defendant WALDEN changed her schedule so that Plaintiff would not have to pump during work hours, thus attempting to eliminate Plaintiff's morning pumping session. This change disrupted Plaintiff's medically necessary pumping intervals and created logistical challenges, including coordinating her six-year-old's morning childcare and managing her breast milk production.

57.    Shortly thereafter, Plaintiff HENRY voiced her disagreement with the schedule change, explained to Defendant WALDEN that she had to express breastmilk every three hours, and complained regarding her reduction in hours. Plaintiff reiterated to Defendant WALDEN that the use of the bathroom as a pumping station was inappropriate and not compliant with legal standards.

58.    Plaintiff HENRY also raised ongoing concerns about the alternative space offered, an empty classroom, which lacked basic privacy and security. Specifically, Plaintiff verbally rejected the use of the empty classroom, explaining that it lacked a locking mechanism, was not consistently available, and could be accessed by others, making it unsuitable for expressing breast milk.

59.    With no suitable alternative provided, Plaintiff HENRY proposed going home during her breaks to pump, and while Defendant WALDEN appeared annoyed, she permitted it.

60.    Then, on or around May 5, 2024, Plaintiff HENRY emailed Defendant WALDEN to raise concerns about her diminished role and reduced hours, seeking clarification on her employment status and reiterating her availability to work more hours.

61.    Importantly, prior to returning to work from her maternity leave, Plaintiff HENRY had made clear to Defendant WALDEN her availability to work full-time: Mondays through

Wednesdays from 8:00 AM to 4:00 PM and Thursdays and Fridays from 6:00 AM to 2:00 PM. Despite this, Defendant WALDEN only assigned her limited hours, often from 8:00 a.m. to 1:00 p.m., prompting Plaintiff to continue seeking additional hours.

62. Then, paradoxically, on or around May 15, 2024, Defendant WALDEN offered Plaintiff HENRY a training position for Director/Leadership through a text message, despite the ongoing threats regarding her job security. Plaintiff expressed confusion in response to the offer, given Defendant WALDEN's previous mention of looking for Plaintiff's replacement. Notably, Defendant WALDEN never responded to Plaintiff's inquiry and did not mention the Director training opportunity again.

63. Only two days after, Plaintiff HENRY witnessed and experienced more problematic conduct from Defendant WALDEN.

64. Specifically, during a staff meeting on May 17, 2024, Defendant WALDEN made a discriminatory comment likening the staff to a reality TV show, "Love and Hip Hop," and frequently used phrases like "acting brown" and described her staff as "ghetto" in a derogatory manner, which created a hostile work environment.

65. Then, on May 20, 2024, Plaintiff HENRY emailed Defendant WALDEN, Mr. Gensler, and other management personnel, including Esperanza Fernandez, Chief People Officer Traci Wilk, and People Operations Specialist Jo-Anna Redway, expressing appreciation for being considered for potential training for the Director role, which had been mentioned in passing by Defendant WALDEN but never formally explained or offered. In the same email, Plaintiff requested clarity regarding her pay, hours, and responsibilities, and reiterated her ongoing concerns about her salary, schedule, inaccurate paystubs, and the

failure to provide proper accommodations for expressing breast milk. Her email detailed these issues and sought resolution, but she received no response.

66. Two days later, on or around May 22, 2024, Defendant WALDEN replied to the email but ignored the core issues raised by Plaintiff HENRY.

67. Instead, in a further act of retaliation, Defendant WALDEN imposed an arbitrary and unreasonable deadline of May 31, 2024, only nine days later, for Plaintiff HENRY to obtain her New York State teaching certification in Early Childhood Education. At the time, Defendant WALDEN was fully aware that Plaintiff was scheduled to take the required certification exam on June 29, 2024, as part of her Master's program. Although the exam would satisfy the certification requirement, the results were not issued immediately and typically took several weeks or more to be processed, making the imposed deadline unattainable.

68. Importantly, Plaintiff HENRY was more than qualified for her position, having obtained her Bachelor's Degree in Early Childhood Education in 2017, having over 8 years of teaching experience, and being enrolled in a Master's Program at Brooklyn College for Early Childhood Education.

69. Yet, Defendant WALDEN threatened that Plaintiff's failure to obtain her certification by May 31, 2024, would be accepted as Plaintiff's resignation.

70. Plaintiff HENRY responded immediately, rebutting Defendant's misrepresentations, again affirming her qualifications and repeating her concerns about her pay, schedule, and pumping conditions to no avail.

71. On May 23, 2024, Plaintiff HENRY then complained to the email address "TLE Inquiries <concerns@tlecorp.com>," which was seemingly intended to address concerns regarding

Defendants Learning Experience, setting forth all her complaints regarding pay, salary, scheduling and pumping, as well as complaints of discrimination and retaliation by Defendant WALDEN.

72.    Plaintiff HENRY received a response from Nicole Picariello, an Operational Compliance Specialist located in Defendant Learning Experience's headquarters in Florida, inquiring into the location of the center involving Plaintiff's complaints.  Plaintiff responded with the address of her work location but never heard back.

73.    Then, on or around May 26, 2024, Plaintiff HENRY emailed Defendant WALDEN requesting her letter of termination, in response to Plaintiff not being able to meet Defendant WALDEN's arbitrary deadline for Plaintiff to obtain the certification by May 31, 2024. However, Defendant WALDEN did not respond.

74.    Without any recourse or other avenues where her complaints could be properly addressed, on or around May 27, 2024, Plaintiff HENRY reached out to the CEO of Defendant The Learning Experience, Richard Weissman, reiterating her concerns and seeking intervention. Mr. Weissman did not respond.

75.    The very next day, on or around May 28, 2024, in another direct act of retaliation, Defendant WALDEN informed Plaintiff HENRY that she no longer qualified for her position and offered her a position to a Substitute Group Teacher role at an hourly rate of $16.00, requiring her to call in daily for available shifts, which would be a clear demotion.

76.    Following Plaintiff HENRY's refusal to be demoted to a substitute teacher position, Plaintiff was effectively terminated by Defendant WALDEN on May 28, 2024, in a final discriminatory and retaliatory act. Notably, Defendant WALDEN refused to provide Plaintiff with a termination letter.

77. Throughout her employment, Plaintiff HENRY did not receive any formal performance reviews. However, on or around April 22, 2024, both Defendant WALDEN and Mr. Gensler verbally acknowledged her strong performance and valuable contributions to the company.

78. As a result of the discriminatory conduct to which she was subjected on the basis of her pregnancy and related conditions and the violations of her rights under labor laws, Plaintiff HENRY made multiple complaints. She raised these concerns both verbally and in writing to various members of management, including in a detailed email sent on May 20, 2024, to Mr. Gensler, Ms. Fernandez, Ms. Wilk, and Ms. Redway. Plaintiff's complaints addressed a range of issues, including inadequate pay, inconsistent scheduling, lack of proper accommodations for expressing breast milk, and retaliatory conduct by Defendant WALDEN.

79. Despite Plaintiff's persistent complaints, neither Defendant WALDEN nor other representatives of Defendants Learning Experience took adequate measures to address her concerns. Defendant WALDEN proposed non-compliant solutions for the pumping station and continued to undermine Plaintiff's authority and reduce her hours and responsibilities motivated by discriminatory and retaliatory animus.

80. Plaintiff HENRY was unlawfully discriminated and retaliated against, humiliated, and degraded on the basis of her sex/gender. As a result, Plaintiff has suffered loss of rights, emotional distress, and loss of income and earnings.

81. Defendant WALDEN's and Defendants Learning Experience's actions and conduct were intentional and for the purpose of harming Plaintiff HENRY.

16

82.   As a result of the acts and conduct complained of herein, Plaintiff HENRY has suffered and will continue to suffer loss of income, future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment in life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress. Because Defendant WALDEN's and Defendants Learning Experience's conduct has been malicious, willful, outrageous, and done with full knowledge of the legion of law to the contrary, Plaintiff HENRY demands punitive damages against the Defendants jointly and severally.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
**(Against Defendants Learning Experience)**

83.   Plaintiff HENRY repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

84.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, for relief based upon the unlawful employment practices of Defendants Learning Experience.

85.   Plaintiff HENRY complains that Defendants Learning Experience violated Title VII's prohibition against discrimination based, in whole or in part, upon an employee's sex.

86.   Defendants Learning Experience engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e–2(a) by discriminating against Plaintiff HENRY because of her sex:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any

17

individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, **sex**, or national origin.

The Pregnancy Discrimination Act, codified at 42 U.S.C. § 2000e(k) states:

**The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions**; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2(h) of this title shall be interpreted to permit otherwise.

87. Defendants Learning Experience's engaged in unlawful employment practices prohibited by Title VII, by discriminating Plaintiff on the basis of her sex (pregnancy.)

88. Accordingly, as a result of the unlawful conduct of Defendants Learning Experience, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII
### (Against Defendants Learning Experience)

89. Plaintiff HENRY repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein at length.

90. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides:

It shall be an unlawful employment practice for an employee to discriminate against any of his employees or applicants for employment . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

18

91.    Defendants Learning Experience retaliated against Plaintiff HENRY for engaging in protected activity in complaining about the Defendants refusal to allow her a proper space to express breastmilk and her reduction of hours and change in compensation, by initially further reducing her work hours, effectively demoting her in function, and eventually terminating her employment.

92.    Accordingly, as a result of the unlawful conduct of Defendants Learning Experience, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

**THIRD CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYSHRL**
**(Against Defendants Learning Experience)**

93.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

94.    Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, **sex**, disability, predisposing genetic characteristics, **familial status**, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

95.    Defendants Learning Experience engaged in an unlawful discriminatory practice by discriminating against the Plaintiff HENRY because of her sex/familial status (pregnancy).

96.    Accordingly, as a result of the unlawful conduct of Defendants Learning Experience, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

19

**FOURTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYSHRL**
**(Against Defendants Learning Experience)**

97.    Plaintiff HENRY repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

98.    New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

99.    Defendants Learning Experience retaliated against Plaintiff HENRY for engaging in protected activity in complaining about the Defendants reducing her hours and changing her compensation, by further reducing her hours, effectively demoting her in function, and eventually terminating her employment.

100.    Accordingly, as a result of Defendants Learning Experience's unlawful conduct, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

**FIFTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW**
**(Against Defendant WALDEN)**

101.    Plaintiff HENRY repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein at length.

102.    New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice "[f]or any person to aid, abet, incite, compel or coerce the doing of any acts under this article, or attempt to do so."

103.    Defendant WALDEN violated this statute as set forth herein.

104. Accordingly, as a result of Defendant WALDEN's unlawful conduct, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

**SIXTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NYCHRL**
**(Against All Defendants)**

105. Plaintiff HENRY repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

106. The New York City Administrative Code § 8-107(1)(a) provides that it is an unlawful discriminatory practice:

> For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service, height, weight, or immigration or citizenship status of any person:
>
> (1)  To represent that any employment or position is not available when in fact it is available;
>
> (2)  To refuse to hire or employ or to bar or to discharge from employment such person; or
>
> (3)  To discriminate against such person in compensation or in terms, conditions or privileges of employment.

107. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff HENRY because of her gender (pregnancy).

108. Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

**SEVENTH CAUSE OF ACTION**
**FAILURE TO ACCOMMODATE UNDER THE NYCHRL**
**(Against All Defendants)**

109.    Plaintiff HENRY repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

110.    The New York City Administrative Code § 8-107(22) provides:

> It shall be an unlawful discriminatory practice for an employer to refuse to **provide a reasonable accommodation, as defined in section 8-102, to the needs of an employee for the employee's pregnancy, childbirth, or related medical condition** that will allow the employee to perform the essential requisites of the job, provided that such employee's pregnancy, childbirth, or related medical condition is known or should have been known by the employer. In any case pursuant to this subdivision where the need for reasonable accommodation is placed in issue, it shall be an affirmative defense that the person aggrieved by the alleged discriminatory practice could not, with reasonable accommodation, satisfy the essential requisites of the job.

111.    Defendants engaged in an unlawful discriminatory practice in violation of the NYCHRL by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff by refusing to accommodate Plaintiff by providing a lactation room.

112.    Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

**EIGHTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYCHRL**
**(Against All Defendants)**

113.    Plaintiff HENRY repeats and realleges each and every allegation made in the above paragraphs of this complaint.

22

114. New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer…to discriminate against any person because such person has opposed any practices forbidden under this chapter…"

115. Defendants Learning Experience retaliated against Plaintiff HENRY for engaging in protected activity in complaining about the Defendants refusal to allow her a proper space to express breastmilk and her reduction of hours and change in pay, by initially further reducing her hours, effectively demoting her in function, and eventually terminating her employment.

116. Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## NINETH CAUSE OF ACTION
## VIOLATION OF THE FLSA SECTION 7(r)

117. Plaintiff HENRY repeats and realleges each and every allegation made in the above paragraphs of this complaint.

118. Section 7(r) of the Fair Labor Standards Act, states:

(1) An employer shall provide—

(A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and

(B) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

(2) An employer shall not be required to compensate an employee receiving reasonable break time under paragraph (1) for any work time spent for such purpose.

119. Defendants violated the section cited herein by failing to provide a proper lactation room for Plaintiff HENRY and interfering with Plaintiff's breaks.

120. Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## TENTH CAUSE OF ACTION
## VIOLATION OF THE FLSA WAGE THEFT PROVISIONS

121. Plaintiff HENRY repeats and realleges each and every allegation made in the above paragraphs of this complaint.

122. At all relevant times, Defendants were employers engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), (d), and (s)(1), and Plaintiff HENRY was an employee entitled to the protections of the FLSA under 29 U.S.C. § 203(e).

123. Plaintiff HENRY was classified as a salaried, exempt employee under the FLSA, and as such, Defendants were required, pursuant to 29 C.F.R. § 541.602(a), to compensate her with her full, predetermined salary for any workweek in which she performed any work, including mandatory training.

124. Despite this obligation, Defendants failed to pay Plaintiff HENRY any wages whatsoever for approximately 36.25 hours of mandatory, job-related training that she performed for the benefit of Defendants prior to the commencement of her on-site day-to-day job duties, during a workweek in which she was otherwise considered employed.

125. Plaintiff HENRY's participation in this training constituted compensable work under the FLSA and its implementing regulations, including 29 C.F.R. §§ 785.27–785.32. The training was mandatory, directly related to her job, conducted during her employment

period, and performed for Defendants' benefit. None of the criteria for exempting such time from compensation were satisfied.

126. Defendants' failure to compensate Plaintiff HENRY for her mandatory training time violated the salary basis requirements under 29 C.F.R. § 541.602 and was willful and in reckless disregard of their obligations under the FLSA.

127. Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

**ELEVENTH CAUSE OF ACTION**
**DISCRIMINATION UNDER NEW YORK STATE LABOR LAW § 206-c**
**(Against All Defendants)**

128. Plaintiff HENRY repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

129. New York State Labor Law § 206-c provides that, "An employer shall provide reasonable unpaid break time or permit an employee to use paid break time or meal time each day to allow an employee to express breast milk for her nursing child for up to three years following childbirth. The employer shall make reasonable efforts to provide a room or other location, in close proximity to the work area, where an employee can express milk in privacy. No employer shall discriminate in any way against an employee who chooses to express breast milk in the workplace. No employer shall discriminate in any way against an employee who chooses to express breast milk in the workplace."

130. Defendants violated the section cited herein by failing to provide a proper lactation room for Plaintiff HENRY and interfering with her pumping breaks.

131.    Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## TWELVETH CAUSE OF ACTION
## VIOLATION OF NEW YORK STATE LABOR LAW WAGE THEFT PROVISIONS

132.    Plaintiff HENRY repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

133.    At all relevant times, Plaintiff HENRY was an "employee" within the meaning of NYLL § 190(2), and Defendants were "employers" within the meaning of NYLL §§ 190(3) and 651(6).

134.    Plaintiff HENRY was employed by Defendants as an exempt salaried employee earning an annual salary of $65,000.00. Under NYLL § 191(1)(d), Defendants were required to pay Plaintiff, a "clerical and other worker," the wages earned in accordance with the agreed terms of employment and "not less frequently than semi-monthly." Defendants were also prohibited from making unauthorized deductions from wages under NYLL § 193(1).

135.    Between on or about February 11, 2023, and March 27, 2023, Plaintiff HENRY performed mandatory training assignments at Defendants' direction. Plaintiff performed compensable work during each of those seven workweeks. Under 12 N.Y.C.R.R. § 142-2.1 and NYLL §§ 191 and 663, this time constitutes "hours worked," and Plaintiff was entitled to be paid her full salary of approximately $1,250 per week for each workweek in which she performed any work, totaling $8,750 in wages earned.

136.    Defendants failed to pay Plaintiff any wages whatsoever for the seven workweeks in which she performed compensable work. This failure to pay Plaintiff her earned wages in

26

accordance with the agreed terms of employment constitutes a violation of NYLL §§ 191(1)(d), 193, and 663(1).

137. Defendants' failure to pay Plaintiff HENRY wages was knowing, willful, and without a good faith basis, entitling Plaintiff to liquidated damages in an amount equal to the unpaid wages under the NYLL, as well as pre-judgment interest, attorneys' fees, and costs.

**THIRTEENTH CAUSE OF ACTION**
**DISCRIMINATION UNDER NEW YORK STATE LABOR LAW § 195(3)**
**(Against All Defendants)**

138. Plaintiff HENRY repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

139. New York State Labor Law § 195(3) provides that every employer shall:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; the benefit portion of the minimum rate of home care aide total compensation as defined in section thirty-six hundred fourteen-c of the public health law ("home care aide benefits"), if applicable; prevailing wage supplements, if any, claimed as part of any prevailing wage or similar requirement pursuant to article eight of this chapter; and net wages. Where such prevailing wage supplements are claimed, or such home care aide benefits are provided, the statement shall either: (i) identify the type of each supplement claimed, or the type of each home care aide benefits provided, and the hourly rate for each; or (ii) be accompanied by a copy of the applicable notice required under subdivisions one and two of this section. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate. Upon the request of an

27

employee, an employer shall furnish an explanation in writing of how such wages were computed.

140. Defendants violated the section cited herein by failing to provide Plaintiff HENRY with pay statements.

141. Accordingly, as a result of the unlawful conduct of Defendants, Plaintiff HENRY has been damaged as set forth herein and is entitled to the maximum compensation available to her under this statute.

## JURY DEMAND

142. Plaintiff HENRY requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff HENRY respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in, and enjoining Defendants from continuing to engage in, unlawful employment practices prohibited by Title VII, the NYSHRL, the NYCHRL, the FLSA, and the NYLL;

B. Awarding damages to Plaintiff HENRY for all lost wages and benefits resulting from Defendants' unlawful discrimination, retaliation, intentional infliction of emotional distress on Plaintiff, and breach of contract, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff HENRY compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff HENRY punitive damages;

E. Awarding Plaintiff HENRY attorneys' fees, costs, and expenses incurred in the prosecution of the action; and;

F. Awarding Plaintiff HENRY such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York

July 3, 2025

**PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC**

By:       */s./ Dorina Cela*
       Dorina Cela, Esq.
       Kayla Wheeler, Esq.
       *Attorneys for Plaintiff*
       45 Broadway, Floor 28
       New York, New York 10006
       (212) 248-7431
       dcela@tpglaws.com
       kwheeler@tpglaws.com

# EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website:  www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/03/2025

**To:** Jennifer Henry
238 Wyckoff Street
Apt 2B
Brooklyn, NY 11217

Charge No: 16G-2024-04529

EEOC Representative and email:    HERNAN MORALES
State and Local Program Manager
HERNAN.MORALES@EEOC.GOV

---

### DISMISSAL OF CHARGE

The EEOC is closing this charge because: Charging Party wishes to pursue matter in Federal District Court.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Elizabeth Rader
04/03/2025

Elizabeth Rader
Acting District Director

Cc:  **Learning Mentor Inc d/b/a/ The Learning Experience**
  **Attn: President/CEO**
  **472 Atlantic Avenue**
  **Brooklyn NY 11217**


  **Phillips & Associate PLLC**
  **Attn: Dorina Cela & Kayla Wheeler – Esqs**
  **45 Broadway**
  **Suite 430**
  **New York NY 10006**


  **Kaufman Dolowich LLP**
  **Attn: Andrea Strain – Esq**
  **245 Main Street**
  **Suite 330**
  **White Plains NY 10601**

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 16G-2024-04529 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Elizabeth Rader, 33 Whitehall St 5th Floor, New York, NY 10004.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 16G-2024-04529 to the District Director at Elizabeth Rader, 33 Whitehall St 5th Floor, New York, NY 10004.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.